IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNSTOPPABLE DOMAINS INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. _____ |
| WALLET INC., and SCOTT FLORCSK, | ) ) **DEMAND FOR JURY TRIAL** ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff Unstoppable Domains, Inc. ("Unstoppable Domains" or "Plaintiff") brings this action against Defendants Wallet Inc. ("Wallet") and Scott Florcsk ("Florcsk") (collectively, "Defendants") for common law trademark infringement, unfair competition under federal and Delaware law, intentional interference with contractual relations, and intentional interference with prospective business relationships.

## INTRODUCTION

Despite knowing that Plaintiff has been marketing and selling .WALLET blockchain domain names for well over a year, resulting in hundreds of thousands of .WALLET domain names sold to customers, Defendants are attempting to sell identical .WALLET domain names that have caused and will continue to cause consumer confusion, misdirected payments and internet traffic, as well as general disruption of Plaintiff's customers' use and enjoyment of .WALLET domain names purchased from Plaintiff. As a result, consumers are unable to reliably access—and, more importantly, send cryptocurrency funds to—the domain name that they intend to access or send funds to. Defendants' calculated misconduct thus jeopardizes not only Plaintiff's business model and customer relationships, but potentially millions of dollars in cryptocurrency transactions.

## THE PARTIES

1. Plaintiff Unstoppable Domains is a Delaware corporation having its principal place of business at 1535 Mission St. Starfish Mission, San Francisco, CA 94103.

2. On information and belief, Defendant Wallet Inc. is a Washington corporation having its principal place of business at 15115 Labrador Lane, Rochester, WA 98579.

3. On information and belief, Defendant Scott Florcsk is an individual residing in the state of Washington and is the owner and operator of Defendant Wallet Inc.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal trademark infringement and federal unfair competition claims pursuant to 15 U.S.C. §§ 1121(a) and 1125 and 28 U.S.C. § 1338(a) and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

5. Venue and personal jurisdiction over Defendants are proper because Defendants have consented to venue and jurisdiction in this Court by filing a motion to intervene in a related action brought by Plaintiff in this Court against third parties based on substantially similar conduct, and with whom Defendants claim to have acted in concert. *See Unstoppable Domains Inc. v. Gateway Registry, Inc., et al.*, C.A. No. 22-948-CFC (the "Related Case"), D.I. 22-24. In addition, Defendants sell their infringing products in this District and Defendants' willful actions have caused and will continue to cause Plaintiff significant damage in this District.

## PLAINTIFF'S VALUABLE TRADEMARK RIGHTS

6. Plaintiff is a software company and blockchain domain name provider that allows individuals and entities to purchase decentralized domain names that are minted as a non-fungible token ("NFT") on the Ethereum blockchain.

7. Plaintiff was founded in 2018 by Matthew Gould, Braden Pezeshki, Bradley Kam, and Bogdan Gusiev.

8. Plaintiff owns and operates a domain registry that markets, sells, and otherwise uses in commerce, over 343,000 unique and distinct domain names having the ".WALLET" top-level domain ("TLD").

9. Plaintiff's commercial use of the .WALLET mark began no later than June 15, 2021.

10. Plaintiff possesses trademark rights in the .WALLET mark by way of its use of that mark. Plaintiff has filed a trademark application (U.S. Serial No. 90/886,517) with the U.S. Patent and Trademark Office for the mark WALLET in the class of "domain name registration services" as that mark is used in the advertising, promotion, and selling of its .WALLET domain names. Plaintiff has been granted trademark rights in the European Union and Japan for the WALLET mark, and applications for registration are pending in other jurisdictions.

11. Plaintiff also possesses trademark rights in the .WALLET mark by way of its previous and ongoing marketing and sale of .WALLET domain names.

12. Until July 2022, Plaintiff was the only domain name registry selling or marketing .WALLET domain names.

13. Plaintiff has spent a substantial amount of money on promoting its brand, and has generated tens of millions of dollars in revenue.

14. Plaintiff has generated over $5,000,000 in revenue attributable to the sale of the .WALLET domain names.

15. Plaintiff's domain name registry has successfully on-boarded hundreds of thousands of users, and its .WALLET domain names are currently operational in 380 partner

applications, making Plaintiff's .WALLET domains available to these partner applications' collective tens of millions of users.

16. Plaintiff's market exposure is vast, and its customers include cryptocurrency wallet users, privacy-conscious internet users, NFT collectors, and domain name enthusiasts.

17. Plaintiff's .WALLET mark has penetrated the market for domain names on the Internet, and is used by customers nationwide.

18. As a result of this prolific use, the .WALLET mark has become closely identified with Plaintiff, and represents substantial, valuable goodwill.

## PLAINTIFF'S CONTRACTUAL AND BUSINESS RELATIONSHIPS

19. Plaintiff sells .WALLET domain names to users for a fee.

20. When users purchase .WALLET domain names from Plaintiff, they must agree to Plaintiff's terms and conditions. In exchange, the users receive exclusive control of the specific .WALLET domain name they have purchased.

21. Purchasers of .WALLET domain names from Plaintiff are given contractual implied warranties by law, which, in this context, could imply that the purchased .WALLET domain name will belong exclusively to the purchaser.

22. Furthermore, Plaintiff's .WALLET domains derive their utility to the customer from usability on various partner applications. These partner applications are displayed to customers on Plaintiff's website.

23. Plaintiff has contractual and business relationships with hundreds of partner applications, with whom Plaintiff contracts to build and provide support for its .WALLET registry and the partner agrees to complete an integration, making it possible to use Plaintiff's domains on the partner applications.

24. Plaintiff has laboriously built out its partnership system to achieve 380 live partner application integrations supporting Plaintiff's .WALLET domains today. This means that as of today, tens of millions of users are actively able to utilize Plaintiff's .WALLET domains in frequently used software applications.

25. In addition, Plaintiff has gone to great lengths to market its .WALLET domains in association with Plaintiff's brand, including launching a public coalition of partner applications that are committed to Plaintiff's .WALLET domains as a market standard. Plaintiff launched this initiative - the ".WALLET Alliance" – in October 2021 in conjunction with 30 of its largest partner applications, collectively representing a user base of more than 40 million users on these 30 applications alone. The aim of this .WALLET Alliance is "to establish a new global standard for peer-to-peer crypto transactions using Unstoppable Domains' simple, easily-readable .wallet NFT Domains." *See* "Unstoppable Domains and 30 Global Crypto Wallet Providers Form New '.wallet' Username Standard" (Oct. 5, 2021) (https://finance.yahoo.com/news/unstoppable-domains-30-global-crypto-130000729.html).

26. If the .WALLET domain registry becomes unreliable or unsafe for consumers to use due to the ongoing infringement by the Defendants, Plaintiff's contractual and business relationships with its partner applications will be irreparably harmed.

27. Further, if the .WALLET domain registry becomes unreliable or unsafe for consumers to use due to the ongoing infringement by the Defendants, Plaintiff's partner applications' contractual and business relationships with their own customers (collectively, tens of millions of customers) will be harmed.

## DEFENDANTS' INFRINGEMENT OF PLAINTIFF'S TRADEMARK
## AND UNFAIR COMPETITION

28. On or about July 4, 2022, Defendants began promoting and offering for sale .WALLET domain names that are not affiliated with or authorized by Plaintiff, via the domain registry gateway.io. As further discussed below, the operators of gateway.io, Gateway Registry, Inc. ("Gateway") and James Stevens ("Stevens"), failed to respond to Plaintiff's Complaint previously brought against them in the Related Case, resulting in the entry of default. *See* Related Case, C.A. No. 22-948, D.I. 15-16.

29. Defendants' unauthorized use of Plaintiff's .WALLET domain names has created and will continue to create numerous conflicts and interference with the thousands of existing .WALLET domain names owners. Thus, such use has a profound adverse impact on Plaintiff's users, on collaborator applications that integrate with Plaintiff's domains, and on Plaintiff itself.

30. Through Gateway, Defendants priced their .WALLET domain names at a fraction of the price of other domain names that Gateway offered for sale, indicating a specific intent to undercut Plaintiff's sales.

31. On July 8, 2022, Plaintiff wrote to Gateway via electronic mail demanding that Gateway cease and desist from selling or offering for sale .WALLET domain names. At that time, Plaintiff was unaware of Defendants' involvement or identities.

32. In response, Stevens communicated the following message to Plaintiff, which Plaintiff now knows he was asked to communicate by Florcsk: "F*** off."

6

### DEFENDANTS ANONYMOUSLY THREATEN PLAINTIFF'S ATTORNEYS, THEN REVEAL THEIR IDENTITIES ONLY IN AN ATTEMPT TO INTERVENE IN THE RELATED CASE

33. Later on July 8, 2022, the attorney who had sent the demand letter to Gateway received an unsigned email from walletdomain@protonmail.com, which purported to respond to the demand letter. *See* C.A. No. 22-948, D.I. 24 (Florcsk Decl.), ¶ 13; *id.* Ex. 1.

34. The author of the email did not provide his name, but identified himself only as "the owner of .wallet." Plaintiff now knows that the author was Defendant Florcsk.

35. In his anonymous email, Florcsk admitted that Defendants had made no attempt to market or sell .WALLET domains until July 2022. Nevertheless, Florcsk refused to take any steps to mitigate the obvious likelihood of customer confusion, asserting simply that "the market will decide." *Id.*

36. In the same anonymous email, Florcsk threatened to have Plaintiff's attorney disbarred, then concluded by admonishing Plaintiff's attorney "not [to] confuse [his] kindness for weakness." *Id.*

37. Because Gateway continued to sell Defendants' infringing .WALLET domains, Plaintiff filed the Related Case against Gateway and Stevens on July 19, 2022.

38. Gateway and Stevens failed to respond to Plaintiff's Complaint, resulting in the Clerk's Entry of Default. *See* C.A. No. 22-948, D.I. 15.

39. On August 19, 2022, Plaintiff filed a motion for default judgment, which sought, *inter alia*, to enjoin Gateway, Stevens, and "those acting in concert with them" from "using, promoting, offering for sale, and/or selling Gateway's unauthorized .WALLET top-level domain names in violation of Unstoppable's trademark and other rights." C.A. No. 22-948, D.I. 18 at 1.

40. On August 29, 2022, Defendant Florcsk filed a Motion to Intervene in the Related Case. C.A. No. 22-948, D.I. 22. Florcsk did not attempt to contact Plaintiff or Plaintiff's attorneys

7

before doing so and indeed has never communicated with Plaintiff or Plaintiff's attorneys aside from the initial anonymous threat letter and formal Court filings.

41. Florcsk's Motion to Intervene revealed that (1) Wallet Inc. purported to be the "owner" of the unauthorized .WALLET domains offered through Gateway; (2) Florcsk purported to be the "owner" of Wallet Inc.; and (3) Florcsk controlled and dictated Wallet Inc.'s unlawful conduct.  C.A. No. 22-948, D.I. 23 at 1.

42. Florcsk's Motion to Intervene was predicated on Defendants' admitted past sales of unauthorized .WALLET domains through Gateway's registry.  *See id.* at 6.

43. In his reply brief in support of his motion to intervene, Florcsk suggests that his proposed intervention is being financed by a third party.  *See* C.A. No. 22-948, D.I. 30 at 8 ("Florcsk immediately undertook efforts to find someone who might help finance the legal costs of asserting his rights, including his right to intervene"); *id.* at 5 ("Florcsk was working tirelessly to find someone who might assist him with the financial resources required to stand up to Unstoppable"); C.A. No. 22-948, D.I. 31 (Florcsk Decl.), ¶ 3 ("I immediately undertook efforts to find someone who might help finance the legal costs of asserting my rights, including my right to intervene.").  On information and belief, the third party funding Florcsk's intervention in the Related Case is a competitor of Plaintiff.

## HARM CAUSED TO PLAINTIFF AND ITS CUSTOMERS

44. Defendants' use, marketing and sale of the .WALLET mark is likely to confuse, mislead, or deceive consumers into believing that Defendants' .WALLET domain names originate from, or are associated with, sponsored by, or affiliated with Plaintiff, or conversely, that Plaintiff's services originate from, or are associated with, sponsored by, or affiliated with Defendants, when they are not.

45. Additionally, if someone purchases a .WALLET domain name from Defendants with the same name as a .WALLET domain name already sold to a user by Plaintiff's, that will create an irreconcilable conflict between the two domain names.

46. Plaintiff's .WALLET users could lose substantial amounts of money if Defendants' .WALLET domain names are permitted to continue to proliferate and circulate in the market.

47. If a cryptocurrency account integrates with both Plaintiff's .WALLET domain name and Defendants' .WALLET domain name, the conflict between two conflicting identical .WALLET domain names could result in the mis-routing of users' cryptocurrency payments; the only thing determining whether the payment went to Plaintiff's version of the domain name or to Defendants' version of the domain name would be the default settings of the application used to initiate the payment.

48. The same misdirection can happen when users of Plaintiff's .WALLET domain name set up a website – Defendants' same .WALLET domain name could cause untold website traffic to be misdirected.

49. The goodwill that Plaintiff's has amassed in the .WALLET mark is likewise put at risk by Defendants' appropriation and use of the .WALLET mark.

50. The harms befalling Plaintiff continue, even if Gateway has ceased selling the infringing .WALLET domain names as the same harmful collisions will continue to occur and Defendants can resume selling .WALLET domain name through a different registrar.

51. Some of Plaintiff's customers are aware of the potential technical collision described above and caused by the existence of Defendants' infringing .WALLET domain names and have expressed concern about the potential harmful consequences. The imminent technical collision erodes consumers' trust and confidence in Plaintiff:



52. Plaintiff has no adequate remedy at law to stop Defendants' ongoing infringement and unfair competition and the potential tremendous tide of misdirected payments to and from tens of thousands of innocent members of the public.

53. Defendants' acts of trademark infringement are presumed to cause irreparable harm to Plaintiff.  *See* 15 U.S.C. § 1116(a).

54. Furthermore, the Defendants' infringement irreparably harms not only Plaintiff, but also the hundreds of partner companies that have invested time and resources in integrating with Plaintiff. Defendants' actions destroy the reliable functioning of Plaintiff on partner applications by producing duplicate .WALLET domain names, rendering the use of Plaintiff's .WALLET domains unreliable and hazardous to partners' users.

55. By causing chaos in partner applications, the Defendants' actions injure all customers of these 380 current and additional pending partner applications. This harms a collective customer base of over 40 million customers.

56. Plaintiff is being, and will continue to be, irreparably injured and harmed by Defendants' unlawful conduct.

57. In addition, Plaintiff has been damaged by Defendants' past infringement and unfair competition.

**FIRST CLAIM FOR RELIEF**
**COMMON LAW TRADEMARK INFRINGEMENT**

58. Plaintiff incorporates by reference all other paragraphs of this Complaint.

59. Plaintiff owns and operates a domain registry that markets, sells, and otherwise uses in commerce, over 343,000 unique and distinct domain names having the ".WALLET" domain name.

60. Plaintiff owns trademark rights in the .WALLET mark, by way of its extensive nationwide use, and its filings with the U.S. Patent and Trademark Office. *See* U.S. Serial No. 90/886,517.

61. Plaintiff also owns trademark rights in the .WALLET mark by way of its previous marketing and selling of. WALLET domain names.

62. For over one year and until July 2022, Plaintiff was the only domain registry selling or marketing the .WALLET domain names.

63. Plaintiff has spent a substantial amount of money promoting its brand, and has generated over $5,000,000 from the sale of .WALLET domain names.

64. Plaintiff's .WALLET domain name registry has already successfully on-boarded tens of thousands of users, and it is already integrated into 380 applications.

65. By being the first to make commercial use of the .WALLET mark, Plaintiff has acquired the right to exclude others from using the .WALLET mark, or any similar mark that is likely to cause confusion in the marketplace.

66. Beginning in July 2022, Defendants have used the .WALLET mark in interstate commerce in connection with its sale, offering for sale, distribution, or advertising of its goods and/or services in the United States.

67. Such sales and offers of sale willfully infringe Plaintiff's .WALLET mark.

68. Defendants' use of the .WALLET mark is likely to cause confusion in the marketplace and is likely to cause mistake or to deceive consumers because the .WALLET domain name that Defendants market and sell is identical to Plaintiff's protected .WALLET domain names.

69. As a direct and proximate result of Defendant's trademark infringement, Plaintiff has been harmed.

70. Plaintiff has suffered damages in an amount to be established after proof at trial or in the statutory amount.

71. Plaintiff is further entitled to disgorge Defendants' profits attributable to its willfully infringing sales.

72. Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION (FEDERAL LAW)

73. Plaintiff incorporates by reference all other paragraphs of this Complaint.

74. Defendants have willfully and consciously committed trademark infringement by using in commerce one or more marks that are identical and confusingly similar to the .WALLET mark on or in connection with the sale of goods and services, in a way that is likely to cause confusion, mistake, or deception as to whether Defendants have a connection with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods and services.

75. The use of infringing trademarks in marketing, and the other actions alleged herein, constitute proscribed acts of unfair competition in violation of 15 U.S.C. § 1125(a).

76. The harm of such unfair competition outweighs its utility, has the effect of confusing and deceiving consumers, and trades off Plaintiff's goodwill. It also has the tendency to dilute the value of Plaintiff's brand.

77. Plaintiff has suffered resulting damages and Defendants have enjoyed resulting profits from the confusion, in an amount to be established at trial.

78. Defendants' acts of unfair competition have caused and will continue to cause damage to Plaintiff in an amount to be determined at trial.

79. Plaintiff is entitled to damages, and further entitled to an accounting of infringing profits as unjust enrichment, for willfulness or for deterrence.

80. As a direct and proximate consequence of the unfair competition complained of herein, Plaintiff has been irreparably harmed to an extent not yet determined and will continue to

be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement.

81. Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

**THIRD CLAIM FOR RELIEF**
**UNFAIR COMPETITION (DELAWARE LAW)**

82. Plaintiff incorporates by reference all other paragraphs of this Complaint.

83. Each of Defendants' acts and omissions alleged herein, including trademark infringement and unfair competition, harms Plaintiff and constitutes improper palming off or passing off under Delaware law.

84. Defendants' use of the .WALLET mark tends to induce consumers into believing that its goods and/or services are affiliated with Plaintiff and its goods and/or services.

85. Defendants' acts and omissions alleged herein constitute unfair competition because the harm from these business practices outweighs the utility, if any, of these business practices, and are unscrupulous and injurious to consumers. Defendants' business practices risk causing irreparable harm to consumers in the service of making a quick profit for Defendants.

86. Defendants' acts and omissions alleged herein constitute unlawful business practices because Defendants' conduct is forbidden by multiple laws, including the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532.

87. Defendants' acts and omissions alleged herein constitute fraudulent business practices because consumers are likely to be deceived.

88. Defendants' activities have caused and will continue to cause damage to Plaintiff, in an amount to be determined at trial.

89. As a direct and proximate consequence of the infringement complained of herein, Plaintiff has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement.

90. Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

**FOURTH CLAIM FOR RELIEF**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

91. Plaintiff has valid contracts with the over 343,000 users who have purchased .WALLET domain names from Unstoppable Domains.

92. Each of those users has agreed to Plaintiff's contractual terms and conditions.

93. Defendants have long been aware of the existence and general nature of such contracts.

94. Defendants intended to interfere with such contracts by means of the wrongful acts and omissions complained of herein.

95. Defendants have in fact interfered with such contracts via the wrongful acts and omissions complained of herein.

96. Defendants have also interfered with any implied warranties between Plaintiff and its customers, via the wrongful acts and omissions complained of herein.

97. Defendants have also frustrated the purpose of such contracts via the wrongful acts and omissions complained of herein.

98. Defendants have no justification or privilege for their wrongful acts and omissions.

99. Plaintiff has been harmed by the wrongful acts and omissions complained of herein.

100. Defendants' activities have caused and will continue to cause damage to Plaintiff, in an amount to be determined at trial.

101. As a direct and proximate consequence of the acts and omissions complained of herein, Plaintiff has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement.

102. Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

## FIFTH CLAIM FOR RELIEF
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

103. Plaintiff has prospective business relationships with current users of its .WALLET domain names and with customers who are interested in the acquiring a .WALLET domain name from Unstoppable Domains in the future.

104. Plaintiff also has prospective business relationships with current partners who have integrated with its .WALLET domain names, and with other businesses who are interested in integrating with its .WALLET domain names in the future.

105. Defendants are familiar with Unstoppable Domains' business model and therefore know that such relationships exist.

106. There is a reasonable probability of a business opportunity between Plaintiff and its current and prospective customers.

107. Defendants intended to interfere with such relationships via the wrongful acts and omissions complained of herein.

108. Defendants have interfered with such relationships via the wrongful acts and omissions complained of herein, including (but not limited to) by causing existing users to be less likely to purchase additional registrations with Plaintiff and by causing prospective future users not to contract with Plaintiff.

109. Plaintiff has been harmed by the wrongful acts and omissions complained of herein.

110. Defendants' activities have caused and will continue to cause damage to Plaintiff, in an amount to be determined at trial.

111. As a direct and proximate consequence of the acts and omissions complained of herein, Plaintiff has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement.

112. Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury of any issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from the Court:

1. Judgment in favor of Plaintiff and against Defendants;

2. Orders temporarily, preliminarily, and permanently enjoining Defendants, and those in active concert with Defendants from continuing their trademark infringement, unfair competition, and interference with business relations;

3.	An award of damages in an amount to be determined at trial, including Defendants' unjust enrichment and profits, with such damages trebled for willful infringement;

4.	An award of exemplary and punitive damages;

5.	Pre-judgment interest and post-judgment interest at the legally allowable rate on all amounts owed;

6.	An award of costs, expenses, and attorneys' fees under 15 U.S.C. § 1117(a) and 6 Del. C. § 2533; and

7.	Such other and further relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Andrew D. Skale
MINTZ LEVIN COHN FERRIS
 GLOVSKY & POPEO
2029 Century Park East, Suite 3100
Los Angeles, CA  90067
(310) 586-3200

September 21, 2022