IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNSTOPPABLE DOMAINS INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WALLET INC. and ) <br> SCOTT FLORCSK, ) <br> ) <br> Defendants. ) | C.A. No. 22-1231 (CFC) <br><br> **DEMAND FOR JURY TRIAL** |

## FIRST AMENDED COMPLAINT

Plaintiff Unstoppable Domains, Inc. ("Unstoppable" or "Plaintiff") brings this action against Defendants Wallet Inc. and Scott Florcsk (collectively, "Defendants") for common law trademark infringement, unfair competition under federal and Delaware law, intentional interference with contractual relations, and intentional interference with prospective business relationships.

## INTRODUCTION

1. Despite knowing that Unstoppable has been marketing and selling WALLET branded domain names for well over a year, resulting in hundreds of thousands of WALLET branded domain names sold to customers, Defendants are attempting to sell identical domain names that have caused and will continue to cause consumer confusion. If Defendants' infringement and unlawful competition is allowed to continue, it could cause misdirected payments and internet traffic, as well as general disruption of Unstoppable's customers' use and enjoyment of their Unstoppable WALLET branded domain names. As a result, users are unable to reliably access—and, more importantly, send cryptocurrency funds to—the domain name that they intend to access or send funds to. Defendants' calculated misconduct thus jeopardizes not only Plaintiff's

business model and customer relationships, but potentially millions of dollars in cryptocurrency transactions.

## THE PARTIES

2. Plaintiff Unstoppable Domains is a Delaware corporation having its principal place of business at 1535 Mission St. Starfish Mission, San Francisco, CA 94103.

3. On information and belief, Defendant Wallet Inc. is a Washington corporation having its principal place of business at 15115 Labrador Lane, Rochester, WA 98579.

4. On information and belief, Defendant Scott Florcsk is an individual residing in the state of Washington and is the owner and operator of Defendant Wallet Inc.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Unstoppable's federal trademark infringement and federal unfair competition claims pursuant to 15 U.S.C. §§ 1121(a) and 1125 and 28 U.S.C. § 1338(a) and supplemental jurisdiction over Unstoppable's state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

6. Venue and personal jurisdiction over Defendants are proper because Defendants have consented to venue and jurisdiction in this Court by filing a motion to intervene in a related action brought by Unstoppable in this Court against third parties based on substantially similar conduct, and with whom Defendants claim to have acted in concert, and Florcsk has separately sued Unstoppable seeking a declaratory judgment of noninfringement based on the same conduct alleged herein to be unlawful. *See Unstoppable Domains Inc. v. Gateway Registry, Inc., et al.*, C.A. No. 22-948-CFC, D.I. 22-24; *Florcsk v. Unstoppable Domains Inc.,* C.A. No. 22-01230-CFC, D.I. 1. In addition, Defendants have sold and intend to continue selling their infringing products in this District and Defendants' willful actions have caused and will continue to cause Unstoppable significant damage in this District.

## UNSTOPPABLE'S VALUABLE TRADEMARK RIGHTS

7. Unstoppable is a software company that provides Web3 domain names that are integrated with hundreds of decentralized applications ("DApps") and provide a variety of functions. Unstoppable's domain names allow purchasers to log in securely to the decentralized web (Web3), verify and build their digital identity, host a decentralized website (reachable through certain browsers, such as Opera), and simplify cryptocurrencies payments to third party wallets.

8. Much as Nike offers several brands of footwear, including AIR JORDAN, AIR MAX, and FLYKNIT, Unstoppable offers differently branded domain names. One of those is WALLET, which features .WALLET as a top level domain (collectively, "WALLET brand" or "WALLET marks").

9. The WALLET marks do not describe a Web3 domain name or the functionalities of an Unstoppable domain name. Rather, the marks identify the TLDs as an Unstoppable product: a top-level domain product in which Unstoppable has devoted significant resources creating and integrating into DApps to provide users with a versatile, unique experience in the decentralized web. It requires imagination, thought, or perception to reach a conclusion regarding the nature of the goods Unstoppable offers under the WALLET brand. For example, WALLET does not describe a web site domain. Nor does WALLET describe a shorthand name for the series of numbers that function as an address for a third party's single-purpose crypto wallet.

10. Since June 15, 2021, Unstoppable has offered for sale domain names under the WALLET brand, and has sold more than 368,000 WALLET branded domain names. Because Unstoppable's domain names are currently operational in more than 480 partner applications, its WALLET branded domains are available to these partner applications' collective tens of millions of users.

11. Until Defendants' activities in July 2022, Unstoppable was the only domain name registry selling or marketing domain names using the WALLET marks and offering WALLET as a top level domain name.

12. Unlike Web2 domain names that are subject to regulation by ICANN, such as .com, .edu, and .net, and for which each string of characters in a domain name will necessarily only resolve to a single location, Web3 domain names are part of the decentralized web. As a starting point, Unstoppable's branded domain names are minted on the blockchain. They have subsequently been integrated into numerous DApps that enable Unstoppable's customers to use the domain names for various activities, such as sending cryptocurrency. There is no technical obstacle, however, to prevent a bad actor from minting an identically named domain name, integrating that domain name into DApps, and creating chaos and confusion over who is associated with which domain. That is because no single entity controls the conflicts that may arise between identical names. Thus, for example, naming collisions could arise if separate entities own identical Web3 domain names, e.g., bob.wallet, just as if more than one shoe company were allowed to sell shoes using the name NIKE. In the context of decentralized websites, this naming collision could send users to a website they think is owned by one party that is actually owned by a different party. In the context of crypto payments, it could cause users to send money to the wrong entity, thereby losing their money *and* depriving the intended recipient of the payment.

13. Unstoppable has spent a substantial amount of money on promoting its WALLET marks, and has generated millions of dollars in revenue.

14. Unstoppable's market exposure is vast, and its customers include cryptocurrency users, privacy-conscious Web3 users, NFT collectors, and domain name enthusiasts.

15. Unstoppable's WALLET marks have penetrated the market for Web3 domain names on the Internet, are used by tens of thousands of customers nationwide, and have been associated with Unstoppable in third-party press.

16. As a result of this prolific use, the WALLET marks have become closely identified with Unstoppable, and represent substantial, valuable goodwill.

17. Unstoppable has gone to great lengths to market its WALLET branded domains in association with Unstoppable's brand, including launching a public coalition of partner applications that are committed to promoting Plaintiff's WALLET branded domains. Plaintiff launched this initiative - the ".WALLET Alliance" – in October 2021 in conjunction with 30 of its largest partner applications, collectively representing a user base of more than 40 million users on these 30 applications alone.

18. Unstoppable possesses trademark rights in the WALLET marks by way of its use of them, and because the WALLET marks are inherently distinctive and/or have acquired secondary meaning.

## UNSTOPPABLE'S CONTRACTUAL AND BUSINESS RELATIONSHIPS

19. Unstoppable sells WALLET branded domain names to users for a fee.

20. When users purchase Unstoppable's WALLET branded domain names, they must agree to Unstoppable's terms and conditions.  In exchange, the users receive exclusive control of the specific WALLET branded domain name they have purchased.

21. Unstoppable's WALLET branded domains derive their utility to the customer from usability on various partner applications.  These partner applications are displayed to customers on Unstoppable's website.

22. Unstoppable has contractual and business relationships with hundreds of partner applications, with whom it contracts to build and provide support for its WALLET branded

5

registry. Those partners agree to complete an integration, making it possible to use Unstoppable's domains on the partner applications.

23. Unstoppable has laboriously built out its partnership system to achieve 480 live partner application integrations supporting its WALLET branded domains today. Those partner applications allow tens of millions of users to utilize Unstoppable's WALLET branded domains in frequently used software applications.

## DEFENDANTS' INFRINGEMENT OF
## UNSTOPPABLE'S TRADEMARKS AND UNFAIR COMPETITION

24. On or about July 4, 2022, Defendants began promoting and offering for sale WALLET domain names that are not affiliated with or authorized by Unstoppable, via the domain registry Gateway Registry, Inc. (http://gateway.io). On information and belief, Defendants were aware of Unstoppable's WALLET branded domain names when they began selling domain names that purported to offer Web3 functionality, including identical domain names to what Unstoppable has sold and offers.

25. On information and belief, Defendants intend to compete with Unstoppable in the same target market for purchasers of Web3 domain names. Florcsk has represented that he is receiving litigation funding from Namebase USA, Inc., which is one of Unstoppable's competitors.

26. Defendants' unauthorized use of WALLET in their domain names has created and will continue to create numerous conflicts and interference with the tens of thousands of existing owners of WALLET branded domain names. As such, Defendants' use has a profound adverse impact on Unstoppable's customers, users, collaborator applications, and on Unstoppable itself.

27. Through Gateway, Defendants priced their WALLET domain names at a fraction of the price of other domain names that Gateway offered for sale, indicating a specific intent to undercut Unstoppable's sales.

28. False statements promoting Defendants' products are also likely to mislead customers and users and harm Unstoppable. For example, the following tweet promoting Defendants' domain names on the Handshake blockchain falsely implied that Unstoppable's WALLET branded domain names are nothing more than a wallet address and that Defendants' domain names are more versatile.



29. In response to Unstoppable's demand that Gateway cease and desist from selling or offering for sale WALLET domain names, Defendants did not agree to stop their sales. Rather, Florcsk asked Gateway to communicate the following message to Unstoppable: "F*** off." On or around July 8, 2022, the attorney who had sent the demand letter to Gateway received an unsigned email from walletdomain@protonmail.com, which purported to respond to the demand letter.

30. The author of the email did not provide his name, but identified himself only as "the owner of .wallet." Plaintiff now knows that the author was Defendant Florcsk.

31. In his anonymous email, Florcsk admitted that Defendants had made no attempt to market or sell WALLET domains until July 2022. Nevertheless, Florcsk refused to take any steps

7

to mitigate the obvious likelihood of customer confusion, asserting simply that "the market will decide."

32. In the same anonymous email, Florcsk threatened to have Plaintiff's attorney disbarred, then concluded by admonishing Plaintiff's attorney "not [to] confuse [his] kindness for weakness."

## HARM CAUSED TO UNSTOPPABLE AND ITS CUSTOMERS

33. Defendants' use, marketing, and sale of the WALLET marks is likely to confuse, mislead, or deceive consumers into believing that Defendants' WALLET domain names originate from, or are associated with, sponsored by, or affiliated with Unstoppable, or conversely, that Unstoppable's services originate from, or are associated with, sponsored by, or affiliated with Defendants, when they are not.

34. Additionally, if someone purchases a WALLET domain name from Defendants with the same name as a WALLET branded domain name that Unstoppable already sold (e.g., bob.wallet), that will create an irreconcilable conflict between the two domain names.

35. Customers and other users of Unstoppable's WALLET branded domains could lose substantial amounts of money if Defendants' WALLET domain names are permitted to continue to proliferate and circulate in the market.

36. If a cryptocurrency account integrates with both Unstoppable's WALLET branded domain name and Defendants' WALLET domain name, the conflict could result in the mis-routing of users' cryptocurrency payments; the only thing determining whether the payment went to Unstoppable's version of the domain name or to Defendants' version of the domain name would be the default settings of the application used to initiate the payment.

8

37. The same misdirection can happen when customers of Unstoppable's WALLET branded domain names set up a website. Defendants' identical-appearing WALLET domain name could cause untold website traffic to be misdirected.

38. The goodwill that Unstoppable has amassed in the WALLET marks is likewise put at risk by Defendants' appropriation and use of "wallet" in connection with their domain names.

39. The harms befalling Unstoppable continue, even if Gateway has ceased selling the infringing WALLET domain names, as the same harmful collisions will continue to occur if Defendants can resume selling WALLET domain names through a different registrar, such as the company funding Defendants' litigation, Namebase (http://namebase.io).

40. Some of Unstoppable's customers are aware of the potential technical collision described above and caused by the existence of Defendants' infringing WALLET domain names and have expressed concern about the potential harmful consequences. The imminent technical collision erodes consumers' trust and confidence in Unstoppable:

> by **Derek Samuelson** on **Wed, 6 Jul at 12:07 AM** via **Portal**
>
> **.wallet domains and HNS**
>
> I own 15 UD .wallet domains, all of which are going to be useless now with Handshake doing the same. What is your plan of action for this, and how will my investment be protected? If it's not resolved and protected quickly, I simply want a refund. This fire should have been put out long before this was able to happen.



41.     Unstoppable has no adequate remedy at law to stop Defendants' ongoing infringement and unfair competition and the potential tremendous tide of misdirected payments to and from tens of thousands of innocent members of the public.

42.     Defendants' acts of trademark infringement are presumed to cause irreparable harm to Unstoppable.  *See* 15 U.S.C. § 1116(a).

43.     If WALLET branded domain names become unreliable or unsafe for consumers to use due to the ongoing infringement by the Defendants, Unstoppable's contractual and business relationships with its partner applications will be irreparably harmed.  Thus, the Defendants' infringement irreparably harms not only Unstoppable, but also the hundreds of partner companies that have invested time and resources in integrating with Unstoppable.

44. Moreover, Defendants' actions destroy the reliable functioning of Unstoppable's domain names on partner applications by producing duplicate domain names, rendering the use of Unstoppable's WALLET branded domains unreliable and hazardous to partners' users.

45. By causing chaos in partner applications, Defendants' actions injure all customers of these 480 current and additional pending partner applications. This harms a collective customer base of over 40 million customers.

46. Unstoppable is being, and will continue to be, irreparably injured and harmed by Defendants' unlawful conduct.

47. Unstoppable has been damaged by Defendants' past infringement and unfair competition.

## FIRST CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT

48. Unstoppable incorporates by reference all other paragraphs of this Complaint.

49. Unstoppable owns and operates a domain registry that markets, sells, and otherwise uses in commerce, over 368,000 unique and distinct WALLET branded domain names.

50. Unstoppable owns trademark rights in the WALLET marks, by way of its extensive nationwide use.

51. Unstoppable also owns trademark rights in the WALLET marks by way of its previous marketing and selling of WALLET branded domain names.

52. For over one year and until July 2022, Unstoppable was the only domain registry selling or marketing WALLET branded domain names.

53. Unstoppable has spent a substantial amount of money promoting its brand, and has generated over $5,000,000 from the sale of WALLET branded domain names.

54. Unstoppable's WALLET branded domain name registry has already successfully on-boarded tens of thousands of users, and it is already integrated into 480 applications.

55. By being the first to make commercial use of the WALLET marks, Unstoppable has acquired the right to exclude others from using the WALLET marks, or any similar mark that is likely to cause confusion in the marketplace.

56. Beginning in July 2022, Defendants have used the WALLET marks in interstate commerce in connection with its sale, offering for sale, distribution, or advertising of its goods and/or services in the United States.

57. Such sales and offers of sale willfully infringe Unstoppable's WALLET marks.

58. Defendants' use of the WALLET marks is likely to cause confusion in the marketplace and is likely to cause mistake or to deceive consumers because the WALLET domain names that Defendants market and sell is identical to Unstoppable's protected WALLET branded domain names.

59. As a direct and proximate result of Defendant's trademark infringement, Unstoppable has been harmed.

60. Unstoppable has suffered damages in an amount to be established after proof at trial or in the statutory amount.

61. Unstoppable is further entitled to disgorgement of Defendants' profits attributable to their willfully infringing sales.

62. Unstoppable's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Unstoppable is entitled to temporary, preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION (FEDERAL LAW)

63. Unstoppable incorporates by reference all other paragraphs of this Complaint.

64. Defendants have willfully and consciously committed trademark infringement by using in commerce one or more marks that are identical and confusingly similar to the WALLET marks on or in connection with the sale of goods and services, in a way that is likely to cause confusion, mistake, or deception as to whether Defendants have a connection with Unstoppable, or as to the origin, sponsorship, or approval of Defendants' goods and services.

65. The use of infringing trademarks and false and misleading representations in marketing, and the other actions alleged herein, constitute proscribed acts of unfair competition in violation of 15 U.S.C. § 1125(a).

66. The harm of such unfair competition outweighs its utility, has the effect of confusing and deceiving consumers, and trades off of Unstoppable's goodwill. It also has the tendency to diminish the value of Unstoppable's brand and cause it reputational injury.

67. Unstoppable has suffered resulting damages and Defendants have enjoyed resulting profits from the confusion, in an amount to be established at trial.

68. Defendants' acts of unfair competition have caused and will continue to cause damage to Unstoppable in an amount to be determined at trial.

69. Unstoppable is entitled to damages, and further entitled to an accounting of infringing profits as unjust enrichment, for willfulness or for deterrence.

70. As a direct and proximate consequence of the unfair competition complained of herein, Unstoppable has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement.

71. Unstoppable's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Unstoppable is entitled to temporary, preliminary and permanent injunctive relief.

### THIRD CLAIM FOR RELIEF
### UNFAIR COMPETITION (DELAWARE LAW)

72. Unstoppable incorporates by reference all other paragraphs of this Complaint.

73. Each of Defendants' acts and omissions alleged herein, including trademark infringement and unfair competition, harms Unstoppable and constitutes improper palming off or passing off under Delaware law.

74. Defendants' use of the WALLET marks tends to induce consumers into believing that their goods and/or services are affiliated with Unstoppable and its goods and/or services.

75. Defendants' acts and omissions alleged herein constitute unfair competition because the harm from these business practices outweighs the utility, if any, of these business practices, and are unscrupulous and injurious to consumers. Defendants' business practices risk causing irreparable harm to consumers in the service of making a quick profit for Defendants.

76. Defendants' acts and omissions alleged herein constitute unlawful business practices because Defendants' conduct is forbidden by multiple laws, including the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532.

77. Defendants' acts and omissions alleged herein constitute fraudulent business practices because consumers are likely to be deceived.

78. Defendants' activities have caused and will continue to cause damage to Unstoppable, in an amount to be determined at trial.

79. As a direct and proximate consequence of the infringement complained of herein, Unstoppable has been irreparably harmed to an extent not yet determined and will continue to be

irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement.

80. Unstoppable's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Unstoppable is entitled to temporary, preliminary and permanent injunctive relief.

## FOURTH CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

81. Unstoppable incorporates by reference all other paragraphs of this Complaint.

82. Unstoppable has valid contracts with the purchasers of its over 368,000 WALLET branded domain names.

83. Each of those users has agreed to Unstoppable's contractual terms and conditions.

84. Defendants have long been aware of the existence and general nature of such contracts.

85. Defendants intended to interfere with such contracts by means of the wrongful acts and omissions complained of herein.

86. Defendants have in fact interfered with such contracts via the wrongful acts and omissions complained of herein.

87. Defendants have also interfered with any implied warranties between Unstoppable and its customers, via the wrongful acts and omissions complained of herein.

88. Defendants have also frustrated the purpose of such contracts via the wrongful acts and omissions complained of herein.

89. Defendants have no justification or privilege for their wrongful acts and omissions.

90. Unstoppable has been harmed by the wrongful acts and omissions complained of herein.

15

91. Defendants' activities have caused and will continue to cause damage to Unstoppable, in an amount to be determined at trial.

92. As a direct and proximate consequence of the acts and omissions complained of herein, Unstoppable has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement.

93. Unstoppable's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Unstoppable is entitled to temporary, preliminary and permanent injunctive relief.

## FIFTH CLAIM FOR RELIEF
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

94. Unstoppable incorporates by reference all other paragraphs of this Complaint.

95. Unstoppable has prospective business relationships with current users of its WALLET branded domain names and with customers who are interested in the acquiring a WALLET branded domain name from Unstoppable Domains in the future.

96. Unstoppable also has prospective business relationships with current partners who have integrated with its WALLET branded domain names, and with other businesses who are interested in integrating with its WALLET branded domain names in the future.

97. Defendants are familiar with Unstoppable's business model and therefore know that such relationships exist.

98. There is a reasonable probability of a business opportunity between Unstoppable and its current and prospective customers and partners.

99. Defendants intended to interfere with such relationships via the wrongful acts and omissions complained of herein.

100. Defendants have interfered with such relationships via the wrongful acts and omissions complained of herein, including (but not limited to) by causing existing users to be less likely to purchase additional registrations with Unstoppable and by causing prospective future users not to contract with Unstoppable.

101. Unstoppable has been harmed by the wrongful acts and omissions complained of herein.

102. Defendants' activities have caused and will continue to cause damage to Unstoppable, in an amount to be determined at trial.

103. As a direct and proximate consequence of the acts and omissions complained of herein, Unstoppable has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of infringement. Unstoppable's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Unstoppable is entitled to temporary, preliminary, and permanent injunctive relief.

## DEMAND FOR JURY TRIAL

Unstoppable requests a trial by jury of any issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Unstoppable requests the following relief from the Court:

1. Judgment in favor of Unstoppable and against Defendants;

2. Orders temporarily, preliminarily, and permanently enjoining Defendants, and those in active concert with Defendants from continuing their trademark infringement, unfair competition, and interference with business relations;

3. An award of damages in an amount to be determined at trial, including Defendants' unjust enrichment and profits, with such damages trebled for willful infringement;

4. An award of exemplary and punitive damages;

5. Pre-judgment interest and post-judgment interest at the legally allowable rate on all amounts owed;

6. An award of costs, expenses, and attorneys' fees under 15 U.S.C. § 1117(a) and 6 Del. C. § 2533; and

7. Such other and further relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Margret Caruso
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Luke Nikas
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000

Sean S. Pak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Adam B. Wolfson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

November 3, 2022